NOTICE
Decision filed 01/28/26. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2026 IL App (5th) 250933-U

NO. 5-25-0933

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE
This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Jefferson County. |
| | ) | |
| v. | ) | No. 25-CF-262 |
| | ) | |
| ERNEST L. GRIFFIN, | ) | Honorable |
| | ) | Jerry E. Crisel, |
| Defendant-Appellant. | ) | Judge, presiding. |

PRESIDING JUSTICE CATES delivered the judgment of the court.
Justices Sholar and Bollinger concurred in the judgment.

**ORDER**

¶ 1    *Held*:   The trial court's orders granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief are affirmed.

¶ 2    Defendant Ernest Griffin appeals pursuant to the Pretrial Fairness Act (Act) (725 ILCS 5/110-1 *et seq.* (West 2024)) from the Jefferson County trial court's November 4, 2025, order granting the State's petition to deny pretrial release, as well as the court's November 6, 2025, order denying his motion for relief and immediate release. The defendant did not file a memorandum in support of his appeal. For the following reasons, we affirm.

¶ 3                              I. BACKGROUND

¶ 4    On November 3, 2025, the defendant was charged by information with one count of domestic battery, a Class 4 felony, and one count of resisting or obstructing a peace officer, a Class

1

A misdemeanor. 720 ILCS 5/12-3.2(a)(2); 720 ILCS 5/31-1 (West 2024). The State filed a verified petition to deny pretrial release the same day, alleging that the defendant was charged with domestic battery, that he posed a real and present threat to the safety of any person or persons or the community, and that no condition or combination of conditions could mitigate that threat. 725 ILCS 5/110-6.1(a)(4) (West 2024). The trial court held a hearing on the State's petition on November 4, 2025.

¶ 5                    A. Hearing on Petition to Deny Pretrial Release

¶ 6     The State presented its evidence by proffer. According to the State, Officers Hawkins and Gray, of the Mount Vernon Police Department, would testify about responding to a call involving a physical domestic incident. Misty Redmond reported that her husband, the defendant, had punched her in the jaw while he was heavily intoxicated. When Officer Hawkins arrived, he observed that Redman's jaw appeared swollen.

¶ 7     Redman told Officer Hawkins that a juvenile witness had seen the defendant punch her. Officer Hawkins spoke with nine-year-old B.R., who said he saw Redman get mad at the defendant for his drinking. The defendant then punched Redmond when she tried to call someone, knocking the phone from her hand. Officer Hawkins also spoke with the defendant, who told him that Redman was lying, that she hit him first, and that he reacted and slapped her.

¶ 8     After determining that he had probable cause, Officer Hawkins informed the defendant that he was under arrest for domestic battery. Officer Hawkins told the defendant to stand up and place his hands behind his back. The defendant stood up, but resisted arrest by flexing his arms and pulling away. Officer Gray was also expected to testify that the defendant resisted arrest by pulling his arms away from the officers and ignoring their commands that he stop.

¶ 9 Eventually, Officer Gray was able to wrap his arms around the defendant's legs, causing him to fall, and the officers were able to gain control over the defendant and handcuff him. The defendant continued to resist by refusing to walk forward, began to fall down, and became dead weight, forcing the officers to drag him to the patrol car.

¶ 10 The defense proffered that the defendant was 51 years old, had lived in Jefferson County for approximately 12 years, had many family members who also lived in the county, and was employed at McDonald's at the time of his arrest. He also reported not having any record of failure to appear in court, and he was not on parole or work release at the time of his arrest. The defendant provided "some support" for his four children, and he claimed that Redman was lying about the incident. Counsel also stated that the defendant would submit to any conditions of release, including electronic monitoring, home confinement, and a stay-away order from Redman, and he would attend rehabilitation services if released. The defendant also identified someone with whom he could stay under home confinement. Counsel argued that the defendant wanted to get back to work to support his children, and that he was not a danger to anyone.

¶ 11 The State argued that the defendant was charged with domestic battery, and that Redman's claim was corroborated by Officer Hawkins's observation of her swollen jaw and the child's eyewitness statement. The State further argued that the defendant posed a real and present threat to the victim and others. He had a criminal history of six felonies and nine misdemeanors, and the Ontario Domestic Assault Risk Assessment (ODARA) predicted that 74% of individuals who scored at the defendant's level would commit an act of domestic violence within five years. He also committed the crime in the presence of a child.

¶ 12 The State also contended that no less restrictive means of preventing the defendant from further criminal conduct existed. At the time of the offense, the defendant was subject to court

supervision in Jefferson County, probation in Cook County for aggravated battery, and conditional discharge in Jefferson County for domestic battery. Therefore, the State argued, he had proven that no conditions of pretrial release would suffice. Furthermore, when he was given orders by police officers, he still was not willing to abide by lawful commands. The State concluded that detention was the only way to protect Redman and others.

¶ 13    The trial court found the following factors in defendant's favor: his community ties and the fact that he had a history of being employed, despite not finishing high school. The trial court then addressed the negative factors, which it described as "pretty lengthy." First, the defendant had a "lengthy" and "bad criminal history" spanning two counties across the state, including terms of imprisonment. His previous charges included battery and domestic battery cases, home invasion, possession of a weapon by a felon, drug offenses, and failure to return from a furlough. The trial court noted that this last offense did not "give [the court] a lot of confidence" about the defendant's likelihood of obeying court orders. The defendant was also on three different kinds of court oversight, all for different offenses, at the time of his arrest, which indicated to the court that he was unable to follow court orders. One of the aforementioned oversights was court supervision for a DUI, to which the trial court added that the defendant's record indicated a serious and ongoing problem with alcohol abuse.

¶ 14    The trial court also found that the charged offense was very serious and was made a felony due to the defendant's criminal history. Furthermore, the State's case, based on its proffer, was very strong and the likelihood of conviction was high. The evidence against the defendant included the victim's statement, police officer observations, and the child eyewitness's account. The court was also troubled by the defendant's failure to follow police orders and added that his striking

4

Redman in the face in front of a child "doesn't speak very highly" of his conduct. Thus, the trial court granted the State's petition to deny pretrial release.

¶ 15    The trial court determined that the defendant would be a threat to Redman and to the public, given his criminal history, his fighting with the police to resist arrest, and his high probability of committing further acts of domestic violence according to the ODARA. The trial court further found that no condition or combination of conditions would assure the court that he could follow any terms set out in a pretrial release order. The trial court granted the State's petition, ruling that the State had met its burden of proof by clear and convincing evidence that the defendant should be denied pretrial release.

¶ 16    The court entered an order to that effect on November 4, 2025, making a finding under the dangerousness standard (725 ILCS 5/110-6.1(a)(1)-(6) (West 2024)) that the defendant posed a real and present threat to the safety of any person or the community and no condition or combination of conditions could mitigate that threat. The trial court found that no less-restrictive conditions could assure the safety of the individuals or community because the defendant was not deterred from committing the alleged conduct by the three different types of less-restrictive conditions he was already obligated to follow.

¶ 17                                    B. Motion for Relief

¶ 18    The defense filed a motion for relief on November 5, 2025, arguing that the State had not met its burden by clear and convincing evidence that no conditions could mitigate any threat defendant posed. The defense contended that the trial court failed to fully consider the defendant's ties to the community, his willingness to abide by any terms of pretrial release, his employment opportunities, and the fact that no weapon was used in the commission of the alleged offense.

¶ 19 The trial court held a probable cause hearing and a hearing on defendant's motion for relief on November 6, 2025. At the hearing, defense counsel repeated the points he made at the detention hearing, and further emphasized that the defendant denied the charges and would submit to any conditions of pretrial release. The State argued that domestic battery is a detainable offense, regardless of whether the defendant used a weapon. The State also summarized its previous proffer and emphasized the strength of the evidence against the defendant, his resisting arrest, his criminal history, and his three active court supervision statuses.

¶ 20 The trial court stated that the defendant was accused of the qualifying detainable offense of domestic battery and agreed with the State that no additional showing—such as the use of a weapon—was required for this finding. The court then acknowledged the points defense counsel raised that went in the defendant's favor—residence in and ties to Jefferson County, not being on mandatory supervised release or work release at the time, and the lack of a weapon in the alleged offense. The trial court also recognized that the defendant had four children for whom he was attempting to provide support and that he wished to attend rehab to address his alcohol use, which the court described as "a central figure in [his] misbehavior."

¶ 21 However, the trial court maintained its finding that the negative points against the defendant were "pretty severe." The court reiterated that the State's case against the defendant was strong. Additionally, Redman's accusation was corroborated by the responding officer's observations and the statement of the child witness, whom the officers considered to be credible. The trial court was also concerned by the fact that the alleged offense occurred in front of at least one of the four children residing with the defendant.

¶ 22 Next, the trial court summarized the defendant's extensive criminal history, which covered "a wide gamut of different types of offenses" in both Jefferson and Cook Counties—six felony

6

and nine misdemeanor convictions, including at least two offenses the trial court considered to be violent. The trial court also noted that the defendant spent a lot of time in Cook County, far from Jefferson County, possibly indicating ties to that community as well. The trial court concluded that his criminal history "speaks for itself. It's terrible."

¶ 23　The defendant was also on three different kinds of court supervision at the time of his arrest, which the trial court repeated were for a DUI, aggravated battery, and domestic battery. The trial court explained that the main provision of each form of supervision was that the defendant follow the law—and his violation of those orders indicated that he would not abide by any pretrial release conditions. Specifically, the trial court indicated it did not have "a lot of faith in [the defendant's] ability to continue or to even successfully abide by a court order." Additionally, the defendant's criminal history included the failure to return from a furlough in 2019, which was yet another instance of the defendant violating a court order. The trial court also found that the defendant's resisting arrest strongly suggested that he would not abide by the law and would pose a danger to Redman, her children, and the community.

¶ 24　The trial court thus denied the defendant's motion for relief on November 6, 2025, finding that there was no condition or set of conditions that would assure that he would abide by the terms of pretrial release or mitigate the threat he posed to the safety of Redman or the general public. Defendant filed a notice of appeal pursuant to Illinois Supreme Court Rule 604(h), which conferred jurisdiction on this court. See Ill. S. Ct. R. 604(h)(3) (eff. Apr. 15, 2024).

¶ 25　　　　　　　　　　　　　　II. ANALYSIS

¶ 26　Pretrial release is governed by article 110 of the Code of Criminal Procedure of 1963 (Code), as amended by Public Act 101-652 (eff. Jan. 1, 2023), sometimes referred to as the Pretrial

Fairness Act. Under article 110 of the Code, a defendant's pretrial release may only be denied in certain limited situations. See 725 ILCS 5/110-2(a), 110-6.1 (West 2024).

¶ 27    If the State files a petition requesting denial of pretrial release,

> "[T]he State has the burden to prove by clear and convincing evidence that the proof is evident or the presumption great that a defendant has committed a qualifying offense, that the defendant's pretrial release poses a real and present threat to the safety of any person or the community or a flight risk, and that less restrictive conditions would not avoid a real and present threat to the safety of any person or the community and/or prevent the defendant's willful flight from prosecution." *People v. Vingara*, 2023 IL App (5th) 230698, ¶ 7; 725 ILCS 5/110-6.1(e), (f) (West 2022).

Our supreme court has instructed that "[e]vidence is clear and convincing if it leaves no reasonable doubt in the mind of the trier of fact as to the truth of the proposition in question." *Chaudhary v. Department of Human Services*, 2023 IL 127712, ¶ 74; see also *People v. Stock*, 2023 IL App (1st) 231753, ¶ 12 ("Clear and convincing evidence is that quantum of proof that leaves no reasonable doubt in the mind of the fact finder about the truth of the proposition in question." (Internal quotation marks omitted.)).

¶ 28    The trial court may order a defendant detained pending trial if the defendant is charged with a qualifying offense and the court concludes the defendant "poses a real and present threat to the safety of any person" or the community. 725 ILCS 5/110-6.1(a) (West 2024). The statute provides a non-exclusive list of "[f]actors to be considered in making a determination of dangerousness" that the trial court may consider in assessing whether the defendant poses such a threat. 725 ILCS 5/110-6.1(g) (West 2024). These include the nature and circumstances of any offense charged, the defendant's history and characteristics, the identity of any person whose safety the defendant is believed to threaten, and "[a]ny other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the

8

defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." 725 ILCS 5/110-6.1(g) (West 2024).

¶ 29    If the trial court finds the State proved a threat to the safety of any person or the community, the court must determine which pretrial release conditions, "if any, will reasonably ensure the appearance of a defendant as required or the safety of any other person or the community and the likelihood of compliance by the defendant with all the conditions of pretrial release." 725 ILCS 5/110-5(a) (West 2024). In making this determination, the court must consider (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; (4) the nature and seriousness of the real and present threat to the safety of any person or the community, based on the specific articulable facts of the case, that would be posed by the defendant's release; and (5) the nature and seriousness of the risk of obstructing or attempting to obstruct the criminal justice process. 725 ILCS 5/110-5(a) (West 2024).

¶ 30    Our standard of review of pretrial release determinations is dependent on whether the trial court heard live witness testimony or whether the parties proceeded solely by proffer or submission of documentary evidence. In the latter case, as here, this court stands in the same position as the trial court and may conduct its own independent review of the proffered evidence, thus reviewing the record *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 54.

¶ 31    The defendant did not include any additional argument on appeal. In his motion for relief, he contended that the trial court failed to fully consider his ties to the community, his employment opportunities, the lack of a weapon used in the alleged offense, and the defendant's willingness to abide by any terms of pretrial release. He has never challenged the trial court's determination that he was charged with a qualifying detainable offense. To the extent that his contention regarding

9

the lack of a weapon goes to this determination, we agree with the trial court that the use of a weapon is not required under the Act. See 725 ILCS 5/110-6.1(a)(4) (West 2024) (identifying domestic battery under section 12-3.2 of the Code as a qualifying offense).

¶ 32    The record shows that the trial court thoroughly reviewed the evidence presented and considered all of the statutory factors in denying pretrial release based upon the dangerousness standard and the lack of conditions that could reasonably ensure the safety of the threatened individuals or the community. Based on the allegations that he committed an act of domestic violence against Redman, in the presence of a child, the trial court found that the defendant posed a threat to Redman's safety, specifically. In the hearing on the defendant's motion for relief, the trial court added that the four children in the home could also be at risk.

¶ 33    The trial court was also concerned by the defendant's lengthy criminal history, finding that his several felonies and misdemeanors, his history of committing violent offenses, and his past disregard for the law, peace officers, and court orders made him a safety risk to the general public. The trial court additionally noted the high likelihood of his committing further acts of domestic violence based on his ODARA score.

¶ 34    Furthermore, the defendant was on three different court supervision orders at the time of his arrest, including one for domestic battery, another for aggravated battery, and one for an alcohol-related offense. Notably, in the present case, the defendant was charged with domestic battery and was allegedly intoxicated while committing the offense. He further demonstrated his continued disregard for following lawful orders when he resisted arrest. There was also strong evidence against him, as Redman's accusation was corroborated by law enforcement and a credible eyewitness. The trial court determined that, based on his demonstrated unwillingness to abide by the terms of court supervision and the likelihood of his committing further offenses, there was no

pretrial condition or combination of conditions that would mitigate the risk he posed to Redman or the general public. We agree with the trial court's findings and conclusions regarding the risk posed to Redman, her children, and the general public and that there were no factors that would mitigate these risks.

¶ 35 Lastly, we find that the record contradicts the defendant's contentions that the trial court overlooked his community ties, employment opportunities, or any other factors in his favor. Rather, the trial court determined that these were insufficient to overcome the weight of the factors against allowing pretrial release. Regarding the defendant's expressed willingness to abide by any terms of pretrial release, the trial court found ample evidence that it was clear the defendant would not abide by any such terms, in light of the circumstances set forth above. We thus conclude that the trial court did not err in both granting the State's petition and denying the defendant's motion for relief.

¶ 36                                   III. CONCLUSION

¶ 37 Based on the foregoing reasons, we affirm the orders of the trial court of Jefferson County granting the State's verified petition to deny pretrial release and denying the defendant's motion for relief.


¶ 38 Affirmed.